1  Benjamin Heikali (SBN 307466)
2  **FARUQI & FARUQI, LLP**
   10866 Wilshire Boulevard, Suite 1470
   Los Angeles, CA 90024
3  Telephone: (424) 256-2884
   Facsimile: (424) 256-2885
4  E-mail:  bheikali@faruqilaw.com

5  [Additional Counsel on Signature Page]

6  *Attorney for Plaintiff Warren Stein*

7
              **IN THE UNITED STATES DISTRICT COURT**
8              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

9  WARREN STEIN, Individually and        )
   on Behalf of All Others Similarly      )
10 Situated,                              )
                                          )
11            Plaintiff,                   )   Case No. 2:20-cv-01763
                                          )
12      v.                                )   **CLASS ACTION COMPLAINT**
                                          )   **FOR VIOLATIONS OF**
13 THE HABIT RESTAURANTS,                 )   **SECTIONS 14(a) AND 20(a) OF**
   INC., RUSSELL WILLIAM                   )   **THE SECURITIES EXCHANGE**
14 BENDEL, IRA FILS, JOSEPH J.            )   **ACT OF 1934**
   KADOW, ALLAN W. KARP,                   )
15 KARIN TIMPONE, A. WILLIAM              )   **JURY TRIAL DEMANDED**
   ALLEN III, CHRISTOPHER K.               )
16 REILLY and IRA ZECHER,                  )
                                          )
17            Defendants.                  )

18
19
20
21
22
23
24
25
26
27
28
   _____
   **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF**
             **THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Warren Stein ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of The Habit Restaurants, Inc., ("Habit" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Habit, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") between Habit and Yum! Brands, Inc. ("Yum!").

2.      On January 5, 2020, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $14.00 in cash for each share of Habit Class A stock they own (the "Merger Consideration").

3.      On February 4, 2020, in order to convince Habit shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Form PREM14A Preliminary Proxy Statement with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.   The materially incomplete and misleading Proxy violates SEC Rule 14a-9 (17 C.F.R. § 240.14a-9). On February 19, 2020, the Company filed a Form DEFM14A Definitive Proxy Statement (the "Proxy") that did not correct the materially incomplete and misleading nature of the preliminary proxy. The Board has scheduled a special meeting of the Company's shareholders

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

2:20-cv-01763

1    on March 18, 2020.

2        4.    While touting the fairness of the Merger Consideration to the

3    Company's shareholders in the Proxy, Defendants have failed to disclose certain

4    material information that is necessary for shareholders to properly assess the fairness

5    of the Proposed Transaction, thereby violating SEC rules and regulations and

6    rendering certain statements in the Proxy materially incomplete and misleading.

7        5.    In particular, the Proxy contains materially incomplete and misleading

8    information concerning the summary of certain valuation analyses conducted by

9    Habit's financial advisor, Piper Sandler & Co. ("Piper Sandler") in support of its

10   opinion that the Merger Consideration is fair to shareholders, on which the Board

11   relied.

12       6.    It is imperative that the material information that has been omitted from

13   the Proxy is disclosed prior to the forthcoming vote to allow the Company's

14   shareholders to make an informed decision regarding the Proposed Transaction.

15       7.    For these reasons, and as set forth in detail herein, Plaintiff asserts

16   claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange

17   Act, based on Defendants' violation of Rule 14a-9 (17 C.F.R. § 240.14a-9). Plaintiff

18   seeks to enjoin Defendants from holding the shareholder vote on the Proposed

19   Transaction and taking any steps to consummate the Proposed Transaction unless,

20   and until, the material information discussed below is disclosed to Habit

21   shareholders sufficiently in advance of the vote on the Proposed Transaction or, in

22   the event the Proposed Transaction is consummated, to recover damages resulting

23   from the Defendants' violations of the Exchange Act.

24                        **JURISDICTION AND VENUE**

25       8.    This Court has subject matter jurisdiction pursuant to Section 27 of the

26   Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question

27

28
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

2:20-cv-01763

jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

9.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Habit maintains its principal executive offices in this District.

## PARTIES

11.    Plaintiff is, and at all relevant times has been, a holder of Habit common stock.

12.    Defendant Habit is incorporated in Delaware and maintains its principal executive offices at 17320 Red Hill Avenue, Suite 140, Irvine, CA 92614.  The Company's common stock trades on the NASDAQ under the ticker symbol "HABT."

13.    Individual Defendant Russell William Bendel is Habit's President and Chief Executive Officer and has been a director of Habit at all relevant times.

14.    Individual Defendant Ira Fils is Habit's Chief Financial Officer and Secretary and has been a director of Habit since August 2014.

15.    Individual Defendant Joseph J. Kadow has been a director of Habit since September 2015.

16.    Individual Defendant Allan W. Karp has been a director of Habit at all relevant times.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

2:20-cv-01763

17.    Individual Defendant Karin Timpone has been a director of Habit since October 2018.

18.    Individual Defendant A. William Allen III has been a director of Habit since October 2014.

19.    Individual Defendant Christopher K. Reilly has been a director of Habit at all relevant times.

20.    Individual Defendant Ira Zecher has been a director of Habit since August 2014.

21.    The Individual Defendants referred to in paragraphs 13-20 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Habit (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23.    This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable.  As of January 29, 2020, there were approximately 21,000,000 shares of Habit common stock outstanding, held by hundreds of individuals and entities scattered throughout the country.  The actual number of public shareholders of Habit will be ascertained through discovery;

b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i.    whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

in the Proxy in violation of Section 14(a) of the Exchange
Act;

ii)      whether the Individual Defendants have violated Section
20(a) of the Exchange Act; and

iii)     whether Plaintiff and other members of the Class will
suffer irreparable harm if compelled to vote their shares
regarding the Proposed Transaction based on the
materially incomplete and misleading Proxy.

c.     Plaintiff is an adequate representative of the Class, has retained
competent counsel experienced in litigation of this nature, and will fairly and
adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members
of the Class and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the
Class would create a risk of inconsistent or varying adjudications with respect
to individual members of the Class, which would establish incompatible
standards of conduct for the party opposing the Class;

f.     Defendants have acted on grounds generally applicable to the
Class with respect to the matters complained of herein, thereby making
appropriate the relief sought herein with respect to the Class as a whole; and

g.     A class action is superior to other available methods for fairly
and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I.   The Proposed Transaction

24.    Habit is a burger-centric, fast casual restaurant that specializes in
preparing fresh, made-to-order char-grilled burgers and sandwiches featuring USDA

- 5 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

choice tri-tip steak, grilled chicken and sushi-grade tuna cooked over an open flame. Additionally, the Company features fresh made-to-order salads and a selection of sides, shakes and malts.

25.    On January 6, 2020, Habit and Yum! issued a joint press release announcing the Proposed Transaction, which states in pertinent part:

> LOUISVILLE, Ky. & IRVINE, Calif.--(BUSINESS WIRE)--Yum! Brands, Inc. (NYSE:YUM) and The Habit Restaurants, Inc. (NASDAQ:HABT) ("The Habit Burger Grill") today announced that they have entered into a definitive agreement pursuant to which Yum! Brands will acquire all of the issued and outstanding common shares of The Habit Burger Grill for $14 per share in cash or a total of approximately $375 million. The board of directors of The Habit Burger Grill, acting on the recommendation of a special committee composed of non-executive independent directors, has unanimously approved the transaction.
>
> The acquisition of The Habit Burger Grill will add an award-winning fast-casual concept with a loyal fan-base to Yum! Brands, the world's largest restaurant company in terms of units and parent of the KFC, Pizza Hut and Taco Bell global brands. Founded in California in 1969, The Habit Burger Grill offers a flavor-forward variety of made-to-order items uniquely chargrilled over an open flame. Fan favorites include charburgers, hand-filleted and marinated chargrilled chicken sandwiches, sushi-grade chargrilled ahi tuna sandwiches, fresh salads, craveable sides and handmade frozen treats. The Habit Burger Grill, named Best Regional Fast Food in USA Today's 2019 Best Readers' Choice Awards, operates nearly 300 company-owned and franchised restaurants across the U.S. and in China.
>
> David Gibbs, Chief Executive Officer of Yum! Brands, said, "We've emerged from our three-year transformation stronger and in a better position to accelerate the growth of our existing brands and leverage our scale to unlock value from strategic acquisitions."
>
> Gibbs continued, "As a fast-casual concept with strong unit economics, The Habit Burger Grill is a fantastic addition to the Yum! family and

- 6 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

has significant untapped growth potential in the U.S. and internationally. With its delicious burgers and fresh proteins chargrilled over an open flame, The Habit Burger Grill offers consumers a diverse, California-style menu with premium ingredients at a QSR-like value. The transaction is a win-win because it allows us to offer an exciting new investment to our franchisees and to expand an award-winning, trend-forward brand through the power of Yum!'s unmatched scale and strengths in franchising, purchasing and brand-building."

Yum! Brands estimates minimal impact to non-GAAP earnings per share before special items in 2020, with accretion beginning in 2021 and increasing thereafter.

Russell Bendel, President and Chief Executive Officer of The Habit Burger Grill, said, "Over the past few years, we've focused on becoming a total access brand by growing our delivery business, expanding our online ordering and mobile channels and enhancing the in-store experience by introducing drive-thrus, kiosks and technology-centric solutions for operations. We're proud these and other actions have made The Habit Burger Grill an attractive candidate for a transaction of this kind. On behalf of The Habit Burger Grill Board of Directors, this transaction represents an exciting new chapter to strengthen and significantly grow The Habit Burger Grill by leveraging Yum! Brands' global scale, resources and franchising capabilities. We're confident the agreement delivers immediate value to The Habit Burger Grill shareholders and will greatly benefit our beloved brand, team members, franchisees and loyal guests for many years to come."

**The Habit Burger Grill Highlights**

***Customer experience of quality, hospitality, convenience and QSR-like value.*** The Habit Burger Grill is focused on delivering a unique customer experience, served up by talented team members and underpinned by outstanding operations capabilities. The brand pairs the premium quality and hospitality consumers associate with full-service and fast-casual chains with the strengths in value, convenience and digital access of quick-service restaurants.

***Diverse, grill-focused and California-style menu.*** It offers customers a diverse menu featuring a distinctive chargrilled preparation technique

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

2:20-cv-01763

to deliver an appealing variety of burgers, chicken, tuna and steak featured in its sandwiches and salads, which are made-to-order using fresh ingredients.

***Modern asset strategy to drive traffic.*** The Habit Burger Grill believes its investment in contemporary restaurant design – featuring open kitchens, outdoor patios and interiors enhanced with natural light, polished stone and hardwood accents – has contributed to its balanced day part mix of approximately 50 percent lunch and 50 percent dinner.

***Expanding digital and delivery capabilities.*** Over the past couple of years, The Habit Burger Grill has been enhancing the customer experience through delivery partnerships and by introducing online ordering, a mobile app, restaurant kiosks, drive-thrus and technology-centric solutions to deliver excellent store operations.

***Strong unit economics and growth.*** From fiscal year 2009 to 2018, The Habit Burger Grill grew its company-operated restaurant average unit volumes (AUVs) by 49.9%, from approximately $1.2 million to $1.9 million, respectively. In the same time period, The Habit Burger Grill grew its total units at a 28.4% compound annual growth rate.

## Transaction Details

Yum! Brands intends to fund the transaction using cash on hand and available borrowing capacity under its credit facilities.

The transaction is subject to approval by The Habit Burger Grill's stockholders, regulatory approval and other customary closing conditions. The transaction is expected to be completed by the end of the second quarter of 2020.

Following the closing of the transaction, The Habit Burger Grill will remain based in Irvine, Calif., and will continue to be managed by The Habit Burger Grill's President and CEO Russell Bendel and Chief Financial Officer Ira Fils. Mr. Bendel will report directly to David Gibbs.

BofA Securities, Inc. acted as financial advisor and Mayer Brown LLP acted as legal advisor to Yum! Brands. Piper Sandler Companies

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

2:20-cv-01763

(formerly Piper Jaffray Companies) acted as financial advisor and Ropes & Gray LLP acted as legal advisor to The Habit Burger Grill.

**About The Habit Burger Grill**

The Habit Burger Grill is a burger-centric, fast-casual restaurant concept that specializes in preparing fresh, made-to-order chargrilled burgers and sandwiches featuring USDA choice tri-tip steak, grilled chicken and sushi-grade tuna cooked over an open flame. In addition, it features fresh made-to-order salads and an appealing selection of sides, shakes and malts. The Habit Burger Grill was recently named Best Regional Fast Food in USA Today's 2019 Best Readers' Choice Awards. The first Habit Burger Grill opened in Santa Barbara, California, in 1969. The Habit has since grown to over 270 restaurants, including locations in 13 states throughout California, Arizona, Utah, New Jersey, Florida, Idaho, Virginia, Nevada, Washington, Maryland, Pennsylvania, North Carolina and South Carolina, as well as seven international locations. More information is available at www.habitburger.com.

**About Yum! Brands**

Yum! Brands, Inc., based in Louisville, Kentucky, has over 49,000 restaurants in more than 145 countries and territories primarily operating the company's restaurant brands – KFC, Pizza Hut and Taco Bell – global leaders of the chicken, pizza and Mexican-style food categories. Worldwide, the Yum! Brands system opens over eight new restaurants per day on average, making it a leader in global retail development. In 2018, Yum! Brands was named to the Dow Jones Sustainability North America Index and ranked among the top 100 Best Corporate Citizens by Corporate Responsibility Magazine. In 2019, Yum! Brands was named to the Bloomberg Gender-Equality Index for the second consecutive year.

26.     Habit is well-positioned for financial growth and the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

2:20-cv-01763

an informed decision concerning whether or not to vote in favor of the Proposed Transaction.

27.    If the false and/or misleading Proxy is not remedied and the Proposed Transaction is consummated, Defendants will directly and proximately have caused damages and actual economic loss (i.e., the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

**II.    The Materially Incomplete and Misleading Proxy**

28.    On February 4, 2020, Defendants caused the preliminary proxy to be filed with the SEC in connection with the Proposed Transaction.  The preliminary proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction.  Defendants were obligated to carefully review the preliminary proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the preliminary proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act. On February 19, 2020, the Company filed the definitive proxy (the "Proxy") that did not correct the materially incomplete and misleading nature of the preliminary proxy.

*The Materially Misleading Financial Analyses*

29.    With respect to Piper Sandler's *Selected Public Company Analysis*, the Proxy discloses that Piper Sandler calculated multiple financial ratios for the seven comparable companies utilizing Adjusted EBITDA. Proxy 53-54. The Proxy fails to disclose the individual multiples calculated for each comparable company. Additionally, the Proxy fails to disclose the Company's total debt and preferred

- 10 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

equity and non-controlling interests. This is material since non-GAAP metrics were included in the analysis, and shareholders cannot be sure the metrics were calculated the same. Shareholders need to know the individual multiples for each company to be able to determine that the calculated multiples are actually comparable to the Company, allowing shareholders to adequately determine the value of their shares.

30. With respect to Piper Sandler's *Selected Precedent Transactions Analysis*, the Proxy discloses that Piper Sandler analyzed 19 selected merger transactions and calculated the enterprise values to the last twelve months Adjusted EBITDA for each. *Id.* at 54-55. The Proxy does not disclose the individual multiples calculated for each transaction, when and if the selected transactions have closed, the size of the selected transactions, Habit's total debt or preferred equity and non-controlling interests.

31. With respect to Piper Sandler's *Premiums Paid Analysis*, the Proxy fails to identify the 36 transactions analyzed in the analysis. *Id.* at 56.

32. With respect to Piper Sandler's *Discounted Cash Flow Analysis*, the Proxy states that Piper Sandler performed a discounted cash flow analysis of Habit by calculating the net present value of the projected unlevered free cash flows from fiscal year 2020 to fiscal year 2023, plus a terminal value at fiscal year 2023 based upon an EBITDA exit multiple range of 7.6x to 9.6x, plus the Company's non-tax receivable agreement related net operating loss balance, plus the Company's portion of the tax benefits from the Umbrella Partnership C-Corporation structure at fiscal year end 2023 and less the Company's tax benefit payments to the tax receivable agreement holders at fiscal year end 2023. *Id.* at 55-56. Piper Sandler utilized a discount rate range of 10.9% to 15.9%, based on the Company's weighted average cost of capital. *Id.* at 56.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

2:20-cv-01763

33.   The Proxy fails to disclose the calculated unlevered free cash flow values for fiscal years 2020 through 2023, the range of terminal values, any of the inputs that went into calculating the Company's weighted average cost of capital, the inputs and assumptions that went into the selection of the EBITDA exit multiple range, the Company's non-tax receivable agreement related net operating loss balance, the Company's portion of the tax benefits from the Umbrella Partnership C-Corporation structure at fiscal year end 2023 or the Company's tax benefit payments to the tax receivable agreement holders at fiscal year end 2023.

34.   Since information was omitted, shareholders are unable to discern the veracity of Piper Sandler's *Discounted Cash Flow Analysis*.   Without further disclosure, shareholders are unable to compare Piper Sandler's calculations with the Company's financial projections.   The absence of any single piece of the above information renders Piper Sandler's *Discounted Cash Flow Analysis* incomplete and misleading.   Thus, the Company's shareholders are being materially misled regarding the value of the Company.

35.   As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's projections and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).   Such choices include "the appropriate discount rate, and the terminal value . . . ." *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change
> can markedly affect the discounted cash flow value . . . . The substantial
> discretion and lack of guidelines and standards also makes the process
> vulnerable to manipulation to arrive at the "right" answer for fairness.

- 12 -

> This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions[.]

*Id.* at 1577-78 (footnotes omitted).

36.    Therefore, in order for Habit shareholders to become fully informed regarding the fairness of the Merger Consideration, the material omitted information must be disclosed to shareholders.

37.    In sum, the Proxy independently violates Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Transaction from Habit shareholders.

38.    Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

39.    Further, failure to remedy the deficient Proxy and consummate the Proposed Transaction will directly and proximately cause damages and actual economic loss to shareholders (i.e., the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

## COUNT I
### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

40.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.    SEC Rule 14a-9 prohibits the solicitation of shareholder votes in proxy

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]"  17 C.F.R. § 240.14a-9(a).

42.    Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

43.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as directors and/or officers, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

44.    The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

45.    The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

- 14 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

46.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

47.     Habit is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

48.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

49.     As a direct and proximate result of the dissemination of the false and/or misleading Proxy Defendants used to recommend that shareholders approve the Proposed Transaction, Plaintiff and the Class will suffer damages and actual economic losses (i.e., the difference between the value they will receive as a result of the Proposed Transaction and the true value of their shares prior to the merger) in an amount to be determined at trial and are entitled to such equitable relief as the Court deems appropriate, including rescissory damages.

## COUNT II
### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

50.     Plaintiff incorporates each and every allegation set forth above as if

- 15 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1  fully set forth herein.

2      51.    The Individual Defendants acted as controlling persons of Habit within

3  the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of

4  their positions as directors and/or officers of Habit, and participation in and/or

5  awareness of the Company's operations and/or intimate knowledge of the

6  incomplete and misleading statements contained in the Proxy filed with the SEC,

7  they had the power to influence and control and did influence and control, directly

8  or indirectly, the decision making of the Company, including the content and

9  dissemination of the various statements that Plaintiff contends are materially

10  incomplete and misleading.

11      52.    Each of the Individual Defendants was provided with or had unlimited

12  access to copies of the Proxy and other statements alleged by Plaintiff to be

13  misleading prior to and/or shortly after these statements were issued and had the

14  ability to prevent the issuance of the statements or cause the statements to be

15  corrected.

16      53.    In particular, each of the Individual Defendants had direct and

17  supervisory involvement in the day-to-day operations of the Company and,

18  therefore, is presumed to have had the power to control or influence the particular

19  transactions giving rise to the Exchange Act violations alleged herein and exercised

20  the same. The Proxy at issue contains the unanimous recommendation of each of

21  the Individual Defendants to approve the Proposed Transaction. They were thus

22  directly involved in preparing the Proxy.

23      54.    In addition, as the Proxy sets forth at length, and as described herein,

24  the Individual Defendants were involved in negotiating, reviewing, and approving

25  the Merger Agreement. The Proxy purports to describe the various issues and

26  information that the Individual Defendants reviewed and considered. The Individual

27

28

- 16 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Defendants participated in drafting and/or gave their input on the content of those descriptions.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.     Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing and to award damages arising from proceeding with the Proposed Transaction;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further relief as this Court may deem just and proper.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

2:20-cv-01763

# JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  February 24, 2020

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: */s/ Benjamin Heikali*
Benjamin Heikali, Bar No. 307466
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Tel.: (424) 256-2884
Fax: (424) 256-2885
Email: bheikali@faruqilaw.com

*Counsel for Plaintiff*

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**

James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

- 18 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Warren Stein ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed a draft complaint against The Habit Restaurants, Inc. ("Habit") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2. Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3. Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in Habit securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6. In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 21st day of February, 2020.

_____
Warren Stein

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 08/02/19 | 300 |
| | | |
| | | |